Case No. 7,264.

JENKINS v. The CONGRESS.

[2 Betts, D. C. MS. 1.]

District Court, S. D. New York. Feb. 4, 1841.

Mr. Bowdoin, for libellant,

Mr. Shufeldt, for claimant,

[1] [Reported by Hon. William Cranch, Chief Judge.]

BETTS, District Judge. Although the claims of material men are intrinsically of a maritime character, and as such fall within the cognizance of courts of admiralty, yet the general jurisdiction is so far modified in this respect in our courts, that it is not exercised over domestic vessels, in behalf of resident creditors, except in consonance with the local law. The General Smith, 4 Wheat. [17 U. S.] 438; Peyroux v. Howard, 7 Pet. [32 U. S.] 324; Phillips v. The Thomas Scattergood [Case No. 11,106]; Davis v. New Brig [Id. 3,643]. The rights of the parties are also measured in such cases by the law of the particular state in which the court sits. The Robert Fulton [Id. 11,890]. The provisions of the state law applicable to the subject are in the Revised Statutes (part 3, tit. 3). "Whenever a debt amounting to $50 or upwards, shall be contracted by the master, owner, agent or consignee of any ship or vessel, within the state, for such provisions or stores furnished within the state, as may be fit and proper for the use of such vessel at the time when the same were furnished, such debt shall be a lien upon such ship or vessel, her tackle, apparel and furniture; and shall be preferred to all other liens thereon, except mariner's wages." Section 1. There is no dispute but that the demand of the libellant falls within the provisions of this act. The controversy between the parties rests upon the question whether the privilege now exists, and can be enforced by this action. The second section of the same act provides that, "When the ship or vessel shall depart from the port at which she was when such debt was contracted, to some other port within this state, every such debt shall cease to be a lien, at the expiration of twelve days after the day of such departure, and in all cases such liens shall cease immediately after the vessel shall have left the state." The general bearing and intent of this limitation is sufficiently manifest. Whether the particular creditors enumerated in the statute are given this privilege because they enjoy the same under the civil law and law maritime,—as was manifestly the design of the first act in 1817 (1 Rev. Laws, 130, § 11),— or whether, because some of the credits at common law entitle the creditor to retain possession of the vessel until his debt is satisfied, the legislature meant to place the others in the same class, and extend the advantages and privileges of a bailment (locatio operis faciendi) for a short term of time beyond the continuance of the actual possession, the language of the statute is plain and significant to denote that the running out of the limitation is to be an absolute bar to the remedy in rem. And it is furthermore manifest that the departure of the vessel acts upon the right of the creditor as the surrender of possession does upon that of a bailee, without regard to the consideration of her return later or sooner to the place where the debt was contracted. The possession of a bailee, once waived or given up, cannot be reclaimed (Story, Bailm. 373), although the thing remain continually within his reach; and so this departure of the vessel, in the mode pointed out by the statute, severs the lien, and it can never afterwards be reclaimed. "It shall cease immediately (the act declares) after the vessel shall have left the state." And this necessarily presupposes her return within the state, where the law might otherwise affect her. As, in this last clause of the section, the legislature most clearly have reference to a temporary departure, and not a final one, the like language in the preceding number must be understood in the same sense. Twelve days after the day of the departure of a vessel from the port where the debt was contracted, to some other port within the state, as definitely and absolutely bars the lien against her as does her departure from the state. In so far, then, as the argument aims at an interpretation of the act which shall uphold the lien unless the vessel leaves the port without intent to return, it cannot be sustained.